J-S65032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.E.B., MOTHER | : | No. 2025 EDA 2017 |

Appeal from the Order Entered May 25, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000098-2017, CP-51-DP-0003369-2015

BEFORE: OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED NOVEMBER 21, 2017**

T.E.B. ("Mother") appeals from the Order involuntarily terminating her parental rights to her minor daughter, S.M.W. ("Child"), born in December 2015, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b)[1] of the Adoption Act.[2] We affirm.

In December 2015, the Philadelphia Department of Human Services ("DHS") filed an Application for Protective Custody for Child after she and Mother tested positive for marijuana and cocaine at Child's birth. In its Application, DHS also averred that Mother had a history of substance abuse

---

[1] The trial court entered a separate Order terminating the parental rights of Child's father, J.R.W. ("Father"). Father has separately appealed the termination of his parental rights, which is docketed at 2024 EDA 2017.

[2] 23 Pa.C.S.A. § 2101-2938.

and mental health issues, was noncompliant in her mental health treatment, and that Mother's five other children had already been removed from her care. DHS additionally alleged that Mother had a life-threatening health condition and was noncompliant in taking her medication to treat the condition.[3] The trial court granted the Application, and Child was placed in foster care. Child remained in foster care pursuant to a shelter-care Order entered on December 30, 2015. On January 14, 2016, following the filing of a DHS Petition, the trial court adjudicated Child dependent. Subsequently, following a hearing, the trial court found aggravated circumstances and entered an Order on April 21, 2016, relieving DHS of its obligation to make reasonable efforts to reunite Mother and Child.

On January 25, 2017, DHS filed a Petition to involuntarily terminate Mother's parental rights to Child. Following several continuances, the trial court conducted a termination hearing on May 25, 2017. Following the hearing, the trial court entered an Order terminating Mother's parental rights to Child. The trial court also changed Child's permanency goal from reunification to adoption.[4]

Mother timely filed a Notice of Appeal, along with a Pa.R.A.P. 1925(a)(2)(i) and (b) Concise Statement.

---

[3] Mother has Human Immunodeficiency Virus ("HIV"). N.T., 5/25/17, at 13.

[4] Mother did not file an appeal from this determination.

On appeal, Mother presents the following questions for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1)[,] where [M]other presented evidence that she substantially met her [Family Service Plan ("FSP")] goals and is able to perform her parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[,] where [M]other presented evidence that she has remedied her situation by attending parenting [classes], and continuing to receive drug treatment and mental health treatment[, and] Mother has the present capacity to care for [] [C]hild[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. [§] 2511(a)(5)[,] where evidence was provided to establish that [] [C]hild was removed from the care of [] [M]other, and that [M]other is now capable of caring for [] [C]hild[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. [§] 2511(a)(8)[,] where evidence was presented to show that [M]other is now capable of caring for [] [C]hild since she has completed parenting [classes] and continues her drug treatment and mental health treatment[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. [§] 2511(b)[,] where evidence was presented that established that [M]other consistently visited [Child] twice a week[,] and [Child] had a parental bond with [] [M]other[?]

Mother's Brief at 7.

In reviewing an appeal from an Order terminating parental rights, we adhere to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden rests upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, the trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). We will focus on sections 2511(a)(2) and (b), which provide as follows:

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (5) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).  The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002); *see also In re A.S.*, 11 A.3d 473, 481 (Pa. Super. 2010)

(noting that section 2511(a)(2) "does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being.") (citation omitted).

Mother argues that the trial court abused its discretion in terminating her parental rights pursuant to section 2511(a)(2) because she had "completed her FSP goals of parenting classes, housing and drug and mental health treatment." Mother's Brief at 16. Mother argues that she has been enrolled in a dual diagnosis treatment program for approximately one year, and the only "[drug] screens presented in court were positive drug screen[s] from 2016[,] when [M]other first began the program." *Id.* Mother also asserts that she can provide Child with a safe home. *Id.*

In granting DHS's petition for involuntary termination, the trial court determined as follows:

> The record demonstrated Mother's ongoing inability to provide care or control for the Child due to her ongoing drug use and her refusal to seek drug and mental health treatment. The [trial c]ourt found clear and convincing evidence that termination of Mother's parental rights would be in the best interest of the Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1)[,](2)[,](5) and (8) and 23 Pa.C.S.A. § 2511(b).
>
> At the [t]ermination [h]earing, the [Community Umbrella Agency ("CUA")] Representative testified that Mother had not met her [stated o]bjectives. Specifically, the CUA Representative testified that Mother was not compliant with her outpatient drug and alcohol treatment. The CUA Representative testified that Mother consistently tested positive for controlled substances throughout the history of the case. The CUA Representative testified that Mother tested positive for marijuana and cocaine on January 14,

2016, February 10, 2016, and March 30, 2016. The CUA Representative testified that Mother also tested positive for marijuana on March 18, 2016[,] and April 21, 2016. The CUA Representative testified that Mother had been inconsistent as to her parenting classes and mental health treatment. As a result, the CUA Representative testified that it was in the Child's best interest that the goal be changed to adoption. Specifically, the CUA Representative testified that during visitation with the Child[,] Mother demonstrated an inability to give proper attention to the Child. The CUA Representative testified that the termination of [] Mother's parental rights would not harm the Child and that the Child was in a pre-adoptive home.

Trial Court Opinion, 7/21/17, at 4-5 (internal citations omitted); **see also** N.T., 5/25/17, at 5-8 (wherein Gaylen Brunson ("Brunson"), the CUA Representative assigned to Mother's case, testified that Mother was not compliant with the program at Chances, an outpatient substance abuse treatment program, continued to test positive when given random drug screens, and was noncompliant with her mental health treatment).

Our review of the record supports the trial court's decision. DHS removed Child from Mother's care based upon Child and Mother testing positive for marijuana and cocaine at Child's birth, and Mother's untreated mental health issues. These problems rendered Mother incapable of parenting Child at the time of her removal. Further, Mother's inability to produce a negative drug screen for any appreciable amount of time supports the trial court's conclusion that Mother refuses to remedy the conditions that led to Child's placement. Although Mother has completed a parenting class and obtained housing, she has failed to alleviate the concerns that caused Child to be placed in the care of DHS. Indeed, Mother's repeated and continued

incapacity, neglect, or refusal to perform her parental duties has caused Child to be without essential parental care, control or subsistence necessary for her physical and mental well-being. Accordingly, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to section 2511(a)(2).

Next, we review the termination of Mother's parental rights under section 2511(b). Mother contends that the trial court abused its discretion in terminating her parental rights under section 2511(b). Mother's Brief at 18. Mother argues that she has visited Child twice a week. *Id.* at 18-19. Mother asserts that there was no evidence that termination was in the best interests of Child. *Id.* at 19.

With respect to section 2511(b), the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). Under section 2511(b), the trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of child." 23 Pa.C.S.A. § 2511(b). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). The trial court must take into account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761

A.2d 1197, 1202 (Pa. Super. 2000) (*en banc*); *see also In re N.A.M.*, 33 A.3d at 103. "However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re N.A.M.*, 33 A.3d at 103 (citation omitted). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *see also In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008) (stating that although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child."). Further, there is no bond worth preserving between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d at 764.

Here, Brunson testified that he believed it was in Child's best interest to be adopted; Child was in a pre-adoptive home; and Child would not suffer any irreparable harm by terminating Mother's parental rights. N.T., 5/25/17, at 9-10. Brunson pointed out that Mother could not care for Child, and Mother had not progressed to unsupervised visits with Child. *Id.* at 8-9; *see also id.* at 14-15 (wherein DHS's counsel stated that Child has been in foster care for her entire life, Mother has never cared for Child on a full-time basis, and that termination of Mother's parental rights was in the best interest of Child); *id.*

at 15 (wherein Child's guardian *ad litem* and counsel indicated that termination was in the best interests of Child).

The evidence within the certified record demonstrates that the termination of Mother's parental rights would best serve Child's needs and welfare because it would provide Child with the permanency and stability that she needs in her life with her pre-adoptive family. **See** Trial Court Opinion, 7/21/17, at 5. At the time of the hearing, Child had been in placement for seventeen months, the entirety of her life. **See In re K.Z.S.**, 946 A.2d at 764. It serves Child's developmental, physical and emotional needs and welfare to terminate Mother's parental rights since it is unclear when, if ever, Mother will be ready to assume her parental responsibilities. **See In re Adoption of C.L.G.**, 956 A.2d at 1007 (noting that courts "will not toll the well-being and permanency of [a child] indefinitely."); **see also In re Z.S.W.**, 946 A.2d 726, 732 (Pa. Super. 2008) (stating that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."). The record supports the trial court's factual findings, and its conclusions are not the result of an error of law or an abuse of discretion. **See In re Adoption of S.P.**, 47 A.3d 817, 826-27 (Pa. 2012). Therefore, we find that the evidence supports the trial court's conclusion regarding the termination of Mother's parental rights to Child pursuant to section 2511(b). Accordingly, we affirm the trial court's Order.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* *11/21/2017*